IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **Gina Marie V.**[1], <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 3:18-cv-456-SI <br><br> **OPINION AND ORDER** |

Merrill Schneider, SCHNEIDER KERR & ROBICHAUX, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Gina Marie V. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act. For the following reasons, the Commissioner's decision is VACATED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of February 5, 2015. AR 155. Plaintiff alleges disability beginning on October 1, 2009. Plaintiff was born on November 15, 1958 and was 50 years old at the alleged onset of disability date. Plaintiff alleged disability due to arthritis in her hips and knees, back surgery, numbness from her lower back to her feet, memory loss, poor balance and mobility, depression, and attention-deficit-hyperactivity disorder (ADHD). AR 176. In an initial determination of April 29, 2015, Plaintiff was found disabled as of June 30, 2014. Disagreeing with the onset date, Plaintiff filed a request for reconsideration. Upon reconsideration, Plaintiff was found not disabled. Plaintiff filed a written request for a hearing and a hearing was held before an administrative law judge ("ALJ") on May 17, 2017. At the hearing, Plaintiff testified and was represented by an attorney. AR 29-35. On August 21, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 23. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

PAGE 3 – OPINION AND ORDER

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2015. Thus, for Plaintiff's DIB claim, she must establish disability on or before that date. The ALJ then conducted the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 17. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, right hip disorder, spine disorder, and bilateral knee disorder. AR 18. The ALJ found that Plaintiff's medically determinable mental impairments caused no more than mild limitation in

PAGE 5 – OPINION AND ORDER

any of the functional areas and were therefore non-severe. AR 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. AR 19.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk a combined total of 4 hours, and sit 6 hours. Pushing and pulling were unlimited other than shown for lifting and carrying. She could frequently climb ramps/stairs and occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch and crawl. She was limited to occasional exposure to hazards such as moving mechanical parts and unprotected heights.

AR 19. At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a social worker, clinical supervisor, care coordinator, corrections counselor, and crisis counselor. AR 23. At step five, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 1, 2009, the alleged onset date, through June 30, 2015, the date last insured. AR 23.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to fully develop the record; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) failing to find limitations from mental health impairments.

**1. Duty to Develop the Record**

Plaintiff argues that the ALJ failed to develop the record to determine the onset of her memory loss. At the hearing, the Vocational Expert testified that, if Plaintiff's RFC included a mental limitation limiting her to performing simple and routine tasks, she would be unable to perform any of her past work. AR 52. If that were the case, Plaintiff would be limited to

PAGE 6 – OPINION AND ORDER

sedentary, unskilled work. TR 52-53. Due to Plaintiff's age (over 50 years old at the time of the alleged onset date) such a finding would render Plaintiff "disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Medical-Vocational Rule 201.14).

Plaintiff argues that the ALJ erred by not determining an onset date for her memory problems. Under SSR 83-20, available at 1983 WL 31249, and Ninth Circuit case law, the ALJ has a responsibility to resolve an ambiguous disability onset date by calling on a medical expert. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (1988). SSR 83-20 reads, in relevant part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . .
>
> This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

1983 WL 31249, at *2-3.

The Commissioner argues that SSR 83-20 is inapplicable because ALJ made no finding of disability in this case. "To trigger the procedures required in SSR 83-20, either the ALJ must make an explicit finding of disability or the record must contain substantial evidence showing that the claimant was disabled at some point after the date last insured, thus raising a question of the onset date." *Rambow v. Berryhill*, 2017 WL 4269965, at *2 (D. Or. Sept. 26, 2017).

The ALJ recognized that the 2017 neuropsychological evaluation performed by Dr. Friedman reflected "memory and concentration deficits," AR 22, and the ALJ asked the

PAGE 7 – OPINION AND ORDER

Vocational Expert to provide an RFC for an individual with mental impairments similar to those reported by Dr. Friedman. Thus, it appears as though the ALJ accepted that after 2017, Plaintiff may have had mental impairments which, as discussed above, would have been disabling when combined with Plaintiff's age, non-transferrable skills, and limitation to sedentary work.

Although the neuropsychological exam was performed nearly two years after the date of last insured, Dr. Friedman wrote that Plaintiff "reported progressive memory dysfunction over the last five years," thus bringing Plaintiff's reported onset of memory problems to within the relevant time frame. AR 452. Dr. Friedman found "psychometric evidence of impairment across multiple neuropsychological domains, including concentration and mental control, learning and memory for auditory-verbal stimuli, and executive functions such as abstraction and cognitive flexibility." AR 456. In short-term memory tests, Plaintiff tested in the 9th percentile and 2nd percentile and Dr. Friedman found her to be in the "moderate to severe range of impairment based on demographically calibrated norms." AR 454.

Based on the results of the 2017 evaluation, there is substantial evidence showing that Plaintiff may have become disabled at some point after the date last insured due to her mental impairments, thus raising a question of the onset date. If the mental limitations would make Plaintiff disabled, the onset date of Plaintiff's mental impairments becomes key. Plaintiff reported that she had been fired from her previous job in 2009 due to her memory problems. In March 2013, she reported memory loss to Physician Assistant Adam B. King. AR 343. In PA King's progress notes, he noted that Plaintiff complained of progressive memory loss over many years. Plaintiff reported that "this affects her on a daily basis" and that it "[s]eems to be worse over the past few months." AR 344. Also in March, 2015, she reported that her memory was

causing her to forget to take her medication. AR 419. In April of 2015, she expressed concern about memory loss again. AR 414.

In *Sam v. Astrue*, the Ninth Circuit found that the ALJ had been under no obligation to develop the medical record because the ALJ found that the claimant had not been disabled at any time through the date of decision. 550 F.3d 808, 810 (9th Cir. 2008). The Ninth Circuit noted in *Sam* that the claimant's reliance on *DeLorne v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991), *Amstrong*, 160 F.3d at 587, and *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991) (per curiam), was "misplaced because in those cases there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date." *Sam*, 550 F.3d at 811. The 2017 neuropsychological report provides substantial evidence that Plaintiff may have become disabled at some point after the date last insured, thus making this case more like *Armstrong*, *Morgan*, and *DeLorne* than *Sam*. In *Armstrong*, because the claimant's disability had progressed slowly, over a period of years, the exact disability onset date was not clear from the record. 160 F.3d at 590. The Ninth Circuit held that the ALJ should have inferred the onset date using the guidance of SSR 83-20 and called a medical export to testify as to the disability onset date. *Id.*

The ALJ made no determination as to when Plaintiff's memory problems developed. SSR 83-20 requires that an ALJ call on the services of a medical advisor when the onset of a disabling condition cannot be inferred. SSR 83-20, available at 1983 WL 31249. Given that Plaintiff's mental impairments could be potentially disabling, the ALJ had a duty to call upon the

services of a medical advisor to obtain evidence and develop the record to determine the onset of her memory problems.[2]

### 2. Subjective Symptom Testimony

The ALJ found that Plaintiff's medically determinable impairments could be expected to produce some of her claimed symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and the evidence in the record. AR 20. The ALJ found that the lack of mental health treatment and "good response to medication" during the relevant time period provided no support for the work-related mental limitations, including memory loss, that Plaintiff claimed. AR 21. Furthermore, the ALJ found that Plaintiff's "robust activities of daily living" were inconsistent with Plaintiff's claimed mental impairments. AR 22.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] A medical expert should evaluate Plaintiff's impairments under the newly promulgated regulations, which apply to all claims pending on or after the effective date of January 17, 2017. 81 Fed. Reg. 66,138.

PAGE 10 – OPINION AND ORDER

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements,

and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."

(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that the lack of mental health treatment and "good response to medication" during the relevant time period discredited Plaintiff's subjective symptom testimony about her memory loss. AR 21-22. The medication Plaintiff was taking at the time, however, was related to her ADHD and depression, and Plaintiff does not dispute that her ADHD and depression were managed well with medication. AR 354. The 2017 neuropsychological evaluation concluded that it was unlikely that her memory loss was caused by her depression or ADHD. AR 456. Therefore, the fact that Plaintiff's ADHD and depression were managed by medication during the relevant time period does not serve to discredit or undermine Plaintiff's testimony about her memory loss.

The ALJ did not discuss Plaintiff's testimony that she was fired from her previous job in 2009 due to her memory problems. Although the ALJ recognized that the 2017 neuropsychological evaluation reflected memory and concentration deficits, the ALJ gave this opinion less weight because it was done almost two years after the date last insured. The ALJ did

not, however, address the report's note that Plaintiff had reported progressive memory loss over a period of five years—pre-dating the date last insured. AR 452. The record evidence describes Plaintiff's repeated complaints of memory loss in 2009, 2013, and 2015 and the ALJ did not provide reasons for discrediting this subjective symptom testimony. To discount a plaintiff's subjective descriptions of his or her symptoms, the ALJ must present findings identifying specific evidence and how it is contradictory to Plaintiff's testimony. *Burch*, 490 F.3d at 680. The ALJ did not address Plaintiff's claims that she lost her job in 2009 due to her memory loss, or that she continued to complain of memory loss in 2013 and 2015.

Plaintiff's activities of daily living included watching her grandchildren for a few hours several days a week, babysitting for a few hours a week at a church, grocery shopping, cooking, doing water aerobics, and taking her dog to the dog park. None of these activities requires particularly detailed short-term memory and Plaintiff never alleged that her memory problems were so severe that they would prevent her from engaging in all daily activities. These activities of daily living do not contradict Plaintiff's testimony that her memory loss had impaired her ability to work as a social worker. The level of detailed short-term memory to work as a social worker, or any of Plaintiff's previous highly-skilled jobs in the field of counseling and social work, is vastly different from the level of detailed short-term memory required to babysit or do water aerobics. AR 38-39. Plaintiff's activities of daily living do not contradict her testimony that her memory loss impaired her ability to perform her previous work as a social worker, and therefore are an improper basis for rejecting Plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1113. On remand, the ALJ should provide specific reasons for rejecting Plaintiff's testimony about her memory loss.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge